Filed 6/10/16  In re U.M. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| In re U. M. et al., Persons Coming Under the Juvenile Court Law. | C080797 |
| SUTTER COUNTY DEPARTMENT OF HUMAN SERVICES, | (Super. Ct. Nos. DPSQ100006589, DFPSQ100006590, DPSQ140006976) |
| Plaintiff and Respondent, | |
| v. | |
| M. M., | |
| Defendant and Appellant. | |

Marian M., mother of the minors, appeals from orders of the juvenile court terminating her parental rights.  (Welf. & Inst. Code,[1] §§ 366.26, 395.)  Mother argues

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

1

the court erred in failing to find she had established the beneficial parental relationship exception to the preference for adoption. We affirm.

FACTS

In December 2014, the Sutter County Department of Human Services (Department) filed a petition to detain the minors, U. M., age 10; A. M., age 6; and M. M. age 3, alleging neglect, mother's substance abuse, and mother's arrest for possession of drugs.

The evidence showed U. M. had been in guardianship with the maternal grandmother from 2006 to 2009 when she agreed to terminate the guardianship because mother had stopped using drugs. When mother relapsed in 2009, the maternal grandmother again sought guardianship several months after the minors were returned to her care. The maternal grandmother told the probate investigator that mother "comes and goes and really upsets the kids." Mother also verbally abused U. M. The investigator spoke to U. M., who said his grandmother took care of him and did not hit or spank him. U. M. told the investigator that mother made him " 'do everything' " including cooking. Ultimately, the probate investigator found the maternal grandmother was not capable of acting as guardian for both U. M. and A. M. and referred the matter to the Department.

In April 2010, as a result of the referral from the probate court, the Department filed a petition to remove the minors U. M., age 6, and A. M., age 2, from mother's custody due to neglect and substance abuse. Mother participated in reunification services for 18 months and family maintenance services for an additional 12 months. In August 2012, the court dismissed the case, awarding sole custody of the minors to mother.

In the summer and fall of 2014, there were ongoing reports of mother leaving the minors in the maternal grandmother's care for extended periods. By December 2014, the home was filthy, mother was arrested on drug charges, and the three minors were removed under the current petition. At the detention hearing, the court ordered the minors detained and conditioned visits on mother testing clean.

2

The jurisdiction report stated mother abandoned the minors when she was using methamphetamine and failed to treat her mental health issues. Mother continued to use drugs while pregnant with M. M. All three minors had behavioral issues when they entered foster care. The juvenile court sustained the petition.

The disposition report, filed in February 2015, recommended offering reunification services to mother. The minors had been moved to new foster homes due to serious behavioral issues which were beginning to resolve. Mother was released from jail but tested positive and was not allowed to visit. Thereafter, mother did not comply with the previsit testing protocol and thus had no visits with the minors. The minors each had emotional and behavioral issues and M. M. was referred for therapy. The juvenile court adopted the reunification plan which included substance abuse treatment and drug testing.

An interim review report in May 2015 stated the minors were doing reasonably well in foster care and were waiting for mother to meet the case plan objectives and take them home again. The social worker made numerous unsuccessful attempts to contact mother from February 2015 to April 2015. Mother was again in custody during part of the review period. After her release, mother did call the social worker wanting to see the minors but did not test and no visit occurred. At the interim review hearing, the Department reported mother was in a residential drug treatment program but was not compliant with the case plan.

The six-month review report, filed in August 2015, recommended termination of mother's services. The social worker had only minimal contact with mother, who had not complied with the case plan and had left the residential drug treatment program after two weeks. In July 2015, mother contacted the social worker, provided a clean drug test, and had one visit. At the review hearing, mother asked the court to order further services. The court declined to do so, terminated mother's services, and set a section 366.26 hearing.

The Department's report for the section 366.26 hearing stated the minors were likely to be adopted. While mother had not visited the minors for over seven months following their detentions, she currently had weekly visits facilitated by transporting the minors to her residential drug treatment program. Both U. M. and A. M. had behavioral issues following visits with mother although neither minor had displayed these difficult behaviors before mother began visits. M. M.'s caretakers told the social worker he had been asking when his name would change to match their name and when he would know he was staying in that home. Both U. M. and A. M. were more ambivalent about adoption and wanted to be reunified with mother. While both liked the foster home, U. M. wanted to live where he could do what he wanted to and he did not want to be adopted. A. M. wanted to be placed with M. M.'s foster parents because it was closer to mother's treatment center. The social worker's assessment was that the minors needed and deserved a safe, stable home.

The California Department of Social Services (Social Services) adoption assessment recommended termination of parental rights as to M. M. and A. M. but to postpone the decision as to U. M. to give him more time to consider adoption. Social Services concluded that weekly visits with mother appeared to be detrimental to the minors because it was confusing to them and not helpful in preparing them for a future without her. Social Services further concluded there was no evidence that the benefit of continued contact between mother and the minors outweighed the benefit to the minors of legal permanence.

At the section 366.26 hearing, the Department took the position that termination of parental rights as to all three minors was the best permanent plan. Mother's counsel objected to termination of parental rights but presented no evidence or argument as to any exception to termination of parental rights. The court stated it could not find that it was in U. M.'s best interest to continue the termination decision and that a continuance would

4

be inconsistent with the plan of permanency for the minor. The court terminated parental rights and ordered a permanent plan of adoption for all three minors.

## DISCUSSION

Mother challenges the orders terminating her parental rights as to the minors arguing she established the beneficial relationship exception to the preference for adoption. We disagree.

Mother had the burden of establishing the existence of any circumstances which constituted an exception to termination of parental rights. (*In re Cristella C.* (1992) 6 Cal.App.4th 1363, 1373; *In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1252; Cal. Rules of Court, rule 5.725(d)(4); Evid. Code, § 500.) However, at the hearing she neither presented evidence nor argued that any such circumstances existed. By failing to raise the issue in the trial court, she has forfeited the issue on appeal. (*In re Christopher B.* (1996) 43 Cal.App.4th 551, 558; *In re Dakota S.* (2000) 85 Cal.App.4th 494, 501-502.)

Assuming arguendo that the reference in the Social Services report to the beneficial parental relationship exception was enough to place that exception to termination at issue, mother still cannot prevail.

At the selection and implementation hearing held pursuant to section 366.26, a juvenile court must choose one of the several " 'possible alternative permanent plans for a minor child. . . . *The permanent plan preferred by the Legislature is adoption.* [Citation.]' [Citation.] If the court finds the child is adoptable, it *must* terminate parental rights absent circumstances under which it would be detrimental to the child." (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368.) There are only limited circumstances which permit the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child." (§ 366.26, subd. (c)(1)(B).)

Termination of parental rights may be detrimental to the minor when: "The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) However, the benefit to the child must promote "the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575; *In re C.F.* (2011) 193 Cal.App.4th 549, 555.) Even frequent and loving contact is not sufficient to establish this benefit absent a significant positive emotional attachment between parent and child. (*In re I.R.* (2014) 226 Cal.App.4th 201, 213.)

Mother could not establish the first prong of the beneficial parental relationship exception because she had not maintained regular visitation and contact with the minors. Mother had not visited at all for over seven months after the minors were detained. This behavior was consistent with her previous pattern of leaving the minors with the maternal grandmother for extended periods. As to the second prong, while there appeared to be some bond between mother and the two older minors, the nature and quality of the relationship was not positive, as shown by U. M.'s and the maternal grandmother's statements as early as 2009 and the minors' serious behavior problems on entering foster care which had largely resolved but resurfaced when contact with mother resumed. Thus, the relationship did not outweigh the benefits to the minors of a secure and stable placement. The juvenile court could not have found, on the evidence before it, that mother had established the beneficial parental relationship. There is no error.

DISPOSITION

The orders of the juvenile court are affirmed.

/s/_____
Robie, J.

We concur:

/s/_____
Hull, Acting P. J.

/s/_____
Butz, J.